Clerk, please call the next case. Kowalczyk, 1103, Michael Kowalczyk v. Dex Massonet May it please the Court, Counsel. My name is Mark Perper and I represent the petitioner Michael Kowalczyk. Your Honors, this is a case in which the Commission vacated a wage differential award by the arbitrator and instead awarded 10% disability to the whole person. Now, we submit to the Court that the evidence is susceptible of only one inference, namely that the July 15, 1997, work accident disabled the petitioner from his pre-injury trade as a bricklayer and caused a loss of earning capacity under Section 18. Let me start out by challenging you on that. You're saying that the evidence is susceptible to only one inference. Doesn't conflicting evidence exist on the threshold question of the causal connection? The opinions of Dr. Jay, how do you pronounce that? Jay Prakash, but he was, we've been calling him Dr. Jay. Right. Dr. Jay and Dr. Levin are clearly on causation were plainly contradictory. They don't agree. Resolving that conflict involves an assessment of the testimony and the credibility. So how can this be a case where everybody agrees on everything? On the facts. There was that credibility finding by the commission, and that's why I'm suggesting that even if you put aside the testimony that was found not credible, if you look at what is undisputed, I think it's rather compelling. But it's a manifest weight question. Ultimately, it's manifest weight, but I think the inferences are susceptible of only that one conclusion. To focus on the undisputed facts. The petitioner, as we know, had an old right-sided herniated disc at L5S1 with right-sided radicular symptoms back in 1995 before the accident. Dr. Cushman, a spinal surgeon, performed a laminectomy and discectomy in July of 95, then referred him to Dr. Jay for work hardening and a functional capacity evaluation. Based on that functional capacity evaluation, he was released to return to full duty as a bricklayer, full-time, full-duty, effective November of 2005. He did return to bricklaying without incident, heavy manual labor, frequent bending, frequent stooping, frequent lifting up to 60 pounds, occasional lifting up to 80 pounds alone, up to 200 pounds with a co-worker. For nearly two years, he had no accidents, no injuries, no medical visits, no significant symptoms, no lost time from work due to his low back. In other words, an excellent surgical result. July 15 of 97, he has a work injury to the low back. I don't think respondents even challenging the accident anymore. They did a trial. I don't think it's an issue any longer, but I can certainly go into it if necessary. Following that accident, he presents to his primary care physician, Dr. Simmons, or her physician assistant. There was some question about which he saw. But then back to Dr. Cushman, the original spinal surgeon. Cushman this time treats him conservatively with medication, home exercise, epidural steroid injection, and recommends a job change. He never before recommended a job change. Refers him back to Dr. J, again, the doctor who saw him for the old 1995 post-surgical treatment. His history of the accident to all these doctors was completely consistent. September 12 of 97, Dr. J orders a repeat functional capacity evaluation. And I would note to the court, it's not very often that we see a case where we've got a before and after of a functional capacity evaluation performed by the same medical provider. So it really is a rather unique and compelling set of facts. This time the functional capacity evaluation imposes significant restrictions on his ability to bend and stoop and for the first time precludes his return to bricklaying, excuse me. So all of this is unrebutted. It's a chain of events, as the case law states, involving a condition of good health, an accident, and a subsequent disabling condition of ill-being. Well, where's the condition of good health? Two years post-surgically without any incident, a full return to bricklaying with virtually no complaints, no medical, no lost time, no nothing. Is your theory this is an accident, this is an incident that aggravated a preexisting condition? That's not your theory, is it? There absolutely was an aggravation. I think everyone agreed. Why are you arguing the two incidents were unrelated? I guess I don't get the Justice's point. The fact that the two events are unrelated, doesn't that weaken your position that the 1997 incident can be said to have aggravated the preexisting condition? How did it aggravate the preexisting condition? You say he returned to good health. He was fine. So where's the aggravation? Well, let's put it this way, Your Honor. There was a back injury superimposed on a preexisting operated back. Whether or not, you know, it's a fresh pathology because it's now on the left side as opposed to the right, or whether it aggravates the preexisting condition, in either event, what we've got is proper evidence that the commission has an obligation to give effect to. And I think that's what the case law holds. Well, that's my confusion. You're pointing out the 1995 surgery involved a herniation on the right side of the spine, correct? Correct. After 1997, it was an injury involving his left side. That is correct. So where's the aggravation? Of what condition? Well, there was testimony that it's an aggravation. But I think as a practical matter, the justice is correct. In either event, we've got a demonstrable work accident. Which brings me to another point. The commission went to great efforts to find Dr. J not credible, and their basis for finding him not credible was that he testified that there was a recurrent disc herniation that he saw on the MRI that the radiologist didn't report. And I would submit to the court whether or not there's a recurrent disc herniation is frankly irrelevant because that wasn't the basis for the restrictions. The basis for the restrictions was the 1997 functional capacity evaluation. But wasn't it deeper than that? Dr. J, by the way, when you use the phrase Dr. J, to me it conjures up another image. Please do. But I don't want to get into that. But Dr. J apparently had said he testified with regard to the herniated disc, but then he had a statement in his records that contradicted that. So if that's the case, why can't the commission find him not to be credible, or at least find his testimony was not credible as much as Levin's was? Why can't they do that? Sure. So throw it out, and let's look at the undisputed facts. And whether the record, looking at the record without his opinion testimony, if it's not going to be found credible, and let's look at whether based on that record the commission had any basis to reverse the wage differential. The second basis that they cited was the surveillance video. I would encourage the court, if you haven't done it, to look at the surveillance video. It shows him doing his new job as a maintenance worker for the Village of Union Grove, Wisconsin, which he's perfectly capable of performing, and he'd be the first to admit it. He did admit it. But there's nothing in the video that indicates he's able to return to work as a bricklayer. I went through his job duties. I won't do it a second time. But the repetitive bending and stooping is primarily what he's currently unable to do, as well as the heaviest lifting. So in summary, why is the conclusion opposite to which the commission came to clearly apparent? I mean, cut to the chase. Because we have a petitioner who completely recovered from a 1995 back injury, had a functional capacity, with a functional capacity evaluation that released him to heavy manual labor, which he did without incident for two years, sustained what amounts to an unrobust injury involving the low back. His original spinal surgeon, who was not found less than credible, by the way, the commission didn't say anything about Dr. Cushman's credibility, and Cushman recommended a job change after the 1997 work accident. Then a repeat functional capacity evaluation, which also found him now disabled. And nothing about the functional capacity evaluation that would show that it's causally related to some old surgery. He's got left-sided symptoms now instead of right-sided symptoms as he did in the old pathology. He has to take a lower-paying job. Two vocational rehabilitation counselors agree that his new job represents his current earning capacity. I mean, to me that sounds like a wage differential case. Now, if we're going to talk about Dr. Levin, and certainly in light of the Gross case, which I cited in a motion for relief to file additional authority because it came out so recently, if the commission is going to rely on a respondent-examining doctor, they've also got to credit what he admits to on cross-examination. So sure, he testified, Levin testified that, oh, in my opinion, the current condition is related to the old 1995 surgery that took place on the opposite side. What's his basis for that? There's no credible basis for that opinion, just like in the Gross case, where the examining doctor had really no credible basis for his opinion that the chronic obstructive pulmonary disease was related to smoking rather than to coal mining. You know, there's been a theme all week, and I hate to raise this with you, but there's case law. It is perfectly acceptable under the case law for the trier of fact to accept one part of a witness's testimony and completely reject another part. Everyone seems to think, well, if the commission found it to be less than credible on one point, they have to reject the entire testimony. That's not the law. You're aware of that? I'm aware of that, Your Honor. I guess in response, I would say the doctor's got to have a basis to support his opinion. Just to say baldly that, oh, you know, the condition, in my opinion, is related to this old surgery, even though he admitted that the symptoms first began on July 15th of 1997. How in heaven's name is it going to be related to an old surgery that took place on the opposite side? He gave no credible explanation for that. Counsel, your time is up. We'll have time to move on. Counsel, please. Thank you for your attention. May it please the Court, Counsel. My name is Deborah Schaefer, and I represent the Epple EJAC Masonry in this case. I must admit I appreciate my opponents finally coming to the agreement that this case is a manifest weight issue. And I could- A little prodding by the Court. I'm sorry? A little prodding by the Court. Thank you. I appreciate that. The Commission determines the weight and credibility of the evidence. And in this case, the Commission determined Petitioner's medical evidence was not credible. This case, there is no opposite conclusion that could have been made based on this evidence. And this Commission's decision is not against the manifest weight of the evidence. In support of his argument, the Petitioner basically asserts that so long as he alleges a wage differential and is earning less money at the time of trial, he should be entitled to get it. Petitioner argues that the Commission is without discretion to award a wage differential merely because he has elected it. Petitioner's argument eliminates the Commission's power to review the evidence de novo and ignores his burden of proof in presenting credible medical evidence. The truth of the matter is the Petitioner's own doctor falsely represented the medical evidence to justify his hasty imposition of a permanent restriction. The Commission did not believe Dr. J. They found him incredible and his testimony and everything that fell from that was deemed incredible as well. Dr. Jayaprakash first saw the Petitioner after the July 15th of 1997 incident one time. At that time, he then suggested the possibility of work hardening would help improve his condition because work hardening did improve his condition after the 1995 incident. Then, on the next visit, the doctor ordered an FCE and that FCE, after that, he imposed this 35 to 40 pound restriction. Dr. Jayaprakash then testified, in fact, and this was much to my surprise during the course of the deposition, that he found evidence of a reherniated disc at that same level. I questioned him, I went through my notes thinking, where is this reherniated disc that I never saw? And basically he said, well, my records were wrong, my records included a typographical error and the radiologist who read the 1997 MRI is wrong too. So basically we now have Dr. Jayaprakash in complete conflict with the prior doctors. And this was about eight years after his records were completed. It is within the Commission's province to disregard evidence they find not credible. And once they disregard the opinions, any alleged permanent restriction falling therefrom was not deemed credible either. The Commission was under no obligation to further review the FCE and the vocational reports that were submitted, which all relied on Dr. Jayaprakash's opinions. The Commission found Dr. Levin more credible, fully within their right to do so, and their decision should not be disturbed. Dr. Levin opined there was no permanent restriction as a result of this July 15th of 1997 incident. There's no permanent restriction, and therefore there's no reliable basis for a wage differential in this case. The Commission's decision is supported by the manifest wit of the evidence, and they have the power to completely disregard all the evidence. Petitioner had a pain complaint on July 15th of 1997. He had physical therapy. He had one lumbar injection and a repeat MRI that showed no change in his condition. The Commission actually did note that Dr. Levin and Dr. Cushman, the original surgeon, were in agreement that there were no changes on the MRI scene. Counsel indicated that the Commission ignored Dr. Cushman. The standard of review in this case is manifest weight, and the Commission did have a basis for their decision. The Commission carefully reviewed all the evidence and felt the medical evidence was lacking with respect to permanent restrictions. They carefully weighed the petitioner's credibility and opined that his actions on the surveillance tapes defied a person in distress at all. The Commission is within their province to weigh this evidence and draw their reasonable conclusions and inferences. There is nothing erroneous in their opinion. A reviewing court should not reweigh the evidence or reject reasonable inferences drawn from it by the Commission, even if other inferences could be drawn. The Commission's assessment of credibility and the testimony of the petitioner is within their province. They properly scrutinized all the evidence in this case, and their unanimous decision is not against the manifest weight of the evidence. I ask that you affirm the Commission's decision in its entirety. Thank you. Thank you, counsel. Mr. Butler. Very briefly, we do not suggest that a wage differential award is in any sense automatic. We understand our burden of proof. Our burden of proof is to demonstrate that the injury caused an inability to return to work at his pre-injury trade, which it did, and a loss of earning capacity, which we believe was also proved through not just his payroll and the union pay scale for his pre-injury job, but also through the opinions of both vocational rehabilitation counselors, Susan Entenberg, who we hired, and Janice Flaherty, who was the respondent's rehabilitation counselor. In terms of Dr. Jayaprakash, I think it has to be recognized that it wasn't just a one-shot exam, because this is a doctor who knew the patient both before and after the injury. And, again, how often do we see that? Certainly, I don't expect the Court to reverse a Commission finding on witness credibility. I wouldn't suggest that. But I would suggest if the Commission is going to make a credibility finding, they have to look at the basis for the opinion of the doctor who they're saying is credible and look at what he said on cross and whether it contradicted his opinion on direct examination. I did not, when I suggested that the Commission ignore Dr. Cushman, what I stated was the Commission ignored Dr. Cushman's recommendation of a job change following the July 5, 1997, accident. And I think if you review the Commission decision, you will find that they did not mention that Dr. Cushman, for the first time after the July 15, 1997, work accident, recommended that the Petitioner change jobs. I also believe that the Commission failed to address the chain of events theory of causal connection. I recognize that it merely gives rise to an inference. They don't have to accept it. I think they do have to address it, especially when the facts, as they are in this case, are so compelling, a chain of events. We don't suggest that the Manifest White Standard of Review is a rubber stamp. Sorry. The Manifest White of the Evidence Standard is not a rubber stamp. I think the Court still has to review what the Commission did and determine whether it's supported sufficiently by the record. And with that, I would ask that the Court, unless there are further questions, reverse the judgment of the Circuit Court, set aside the Commission decision, and reinstate the decision of the arbitrator. Thank you. The Court will take the matter under adjudgment for disposition.